# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DeJESUS COLLINS, #366-774,                  *

Plaintiff                                   *

v                                       *        Civil Action No.  JKB-18-2189

WARDEN CASEY CAMPBELL[1] and     *
OFFICER ADEMOLA ADENIYI,
                                     *

Defendants

***

## MEMORANDUM OPINION

Self-represented Plaintiff DeJesus Collins, a State prisoner incarcerated at Jessup Correctional Institution ("JCI") in Jessup, Maryland, filed an unverified[2] Complaint pursuant to 42 U.S.C. § 1983 seeking unspecified damages against Correctional Defendants Warden Casey Campbell and Officer Ademola Adeniyi for an alleged sexual assault occurring on April 10, 2018. Now pending is an unopposed[3] Motion to Dismiss or, in the Alternative, Motion for Summary

---

[1] The Clerk shall amend the docket to reflect Defendant Campbell's full name.

[2] Collins provides no declaration or affidavit in support of his lawsuit.

[3] Consonant with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on November 27, 2018, the Clerk notified Collins that Defendants had filed a dispositive motion. *See* ECF No. 8. He was also informed of his right to file a timely written response and of the possibility that if he failed to respond the case could be dismissed or a judgment entered against him without further notice. *Id.* On March 20, 2019, the Clerk received correspondence from Collins stating, "they are stop[p]ing me from sending my mail off!" and claiming he needed "some time so someone can come get my mail, my evidence! I have a lot of evidence!" ECF No. 9, pp. 1-2. Collins's claim of denial of access to the court is belied by the fact that between November 27, 2018, and August 13. 2019, Collins initiated two civil rights actions (*Collins v. Warden, et al.*, Civil Action No. JKB-19-480 (D. Md.) and *Collins v. Campbell, et al.*, Civil Action No. JKB-19-1012 (D. Md.)) and filed correspondence in another pending case. *See Collins v. Dep't Public Safety and Corr. Serv., et al.*, Civil Action No. JKB-17-2479 (D. Md.).

Judgment filed by Correctional Defendants Campbell and Williams. ECF No. 7.[4] For the reasons stated below, Defendants' dispositive motion, construed as a motion for summary judgment,[5] will be granted.

## Background

### A. Plaintiff Collins's Allegations

Collins states that between 6:00 and 6:30 p.m. on April 10, 2018, he was in his wheelchair and under escort by Officer Adeniyi to attend a medical appointment. During this time Adeniyi "made sexual advances" while they were in the hallway near the psychology office. Compl., ECF 1, p. 2. Collins states they stopped in the hallway near the hospital restroom and when he told Adeniyi that he had to use the bathroom, Adeniyi stated "go on yourself so I can see." *Id.*, pp. 4-5. Collins claims Adeniyi pushed him to an isolated hallway out of camera range where there were no witnesses and put his hand down his back. When Collins resisted, Adeniyi hit him in the back, causing Collins to fall from his wheelchair, where Adeniyi continued his assault. *Id.*, p. 5. Collins states Adeniyi "backed off" when Collins started "holl[er]ing for help" and someone called a supervisor. Collins claims a captain responded to the request for a supervisor. *Id.*

### B. Defendants' Assertions[6]

Defendant Adeniyi was on duty on April 10, 2018, working the 3-11pm shift, when he was ordered to escort Collins in his wheelchair from his cell to the medical unit for a scheduled IV

---

[4] This opinion cites to the pagination assigned by the Court's electronic docket.

[5] Defendants' dispositive motion is treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 because materials outside the original pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

[6] Counsel's lead argument invoking qualified immunity is presented without any factual analysis and merits no examination. *See* ECF No. 7, pp. 8-9. Counsel is reminded that prisoner assault by corrections personnel has long been recognized as a violation of the Eighth Amendment.

2

drip. ECF No. 7-2, Decl. of Ademola Adeniyi, ¶ 3. After a nurse inserted the IV drip, Adeniyi escorted Collins and the attached IV stand to a nearby medical holding cell so the IV drip could be completed. *Id.* Roughly five minutes later, Collins asked to use the restroom, so Adeniyi escorted him to a nearby restroom. *Id.* After Collins left the restroom, he stated he would not return to the holding cell in case he needed to use the restroom again. He further stated he wanted to be transferred to housing at Jessup Regional Hospital ("JRH"), the prison hospital adjacent to the medical unit. *Id.*

Medical staff walking by told Collins that his transfer to JRH would not be possible at that time. *Id.,* ¶ 3. By then, Collins's presence obstructed the flow of movement in the hallway as other prisoners began arriving at the medical unit for their scheduled medical visits. This created a potential security risk because Adeniyi was required to keep himself between Collins and other prisoners passing by in the hallway. *Id.* Adeniyi and other officers posted near the medical area asked Collins to agree to be taken to the holding cell to complete his IV drip, but he refused. *Id.*

Adeniyi avers that in accordance with institutional procedures, officers may not make physical contact with wheelchair-bound prisoners without their consent. *Id.,* ¶ 4. After about ten minutes, Collins still refused to be placed into the holding cell but agreed to be moved to a different part of the hallway near the psychology office, where there was no prisoner traffic. *Id.,* ¶ 5. Once there, Collins began to push himself in the wheelchair towards JRH. *Id.* Adeniyi ordered him to stop and stood in front of Collins, blocking him from continuing any further in his wheelchair, then told Collins he was returning him back to the holding cell area. *Id.* When Adeniyi went behind the wheelchair to begin pushing him back to the holding cell area, Collins put his feet on the floor. *Id.,* ¶ 6. When Adeniyi ordered him to pick his feet up from the floor, Collins stood up from the wheelchair and laid down on the hallway floor on his side, stating that he was not going

anywhere until he saw a supervisor or captain. *Id.* Collins refused Adeniyi's orders to get back into the wheelchair. *Id.*

A nurse passing by offered to hold the wheelchair while Adeniyi helped Collins back into the wheelchair; however, institutional procedure did not permit Adeniyi to make physical contact with Collins in that situation. *Id.*, ¶ 6. Medical personnel tried to talk Collins into getting back into his wheelchair, but he refused. Adeniyi instructed an officer to call for the shift captain, who arrived within a couple minutes. *Id.* Following procedure, the Captain assumed custody of Collins and directed Adeniyi to exit the area in order to alleviate any possible escalation of the situation. *Id.* Later in his shift, Adeniyi learned of the allegations Collins made against him and was instructed to write a Matter of Record (MOR) statement. *Id.*; *see also* ECF No. 7-3, Serious Incident Report, pp. 12-13.

Adeniyi avers he never made sexual advances towards Collins and did not state "go on [yourself] so I can see" as alleged in the Complaint. *Id.*, ¶ 7. Adeniyi further avers that he never placed his hand down Collins's back, never struck Collins's back, causing him to fall out of his wheelchair, and never physically assaulted Collins. *Id.*, ¶ 8. Adeniyi received no reprimand as a result of the allegations made against him. *Id.*, ¶ 10.

Defendants note that in light of Collins's allegations, a Serious Incident Report (SIR) investigation was conducted by the shift captain. ECF No. 7-3, Declaration of Erika Fitch, Administrative Case Manager, with attachments, p. 2. The investigation substantially confirmed Adeniyi's version of the event. The summary found that during the medical visit for his IV drip, Collins became disruptive by stopping his wheelchair with his feet and lying on the floor after he was informed by staff that he could not be housed in JRH as he requested. Collins then made verbal statements to the shift captain accusing Adeniyi of punching him with closed fists in the

4

stomach and back, but the shift captain observed no injuries or bruises on Collins. Collins refused to provide a written statement on the day of the alleged incident but wrote one the following day accusing Adeniyi of sexual advances in violation of PREA ("Prison Rape Elimination Act"). No video footage was available for the incident.[7] *Id.*, pp. 3-4. The report also noted that in addition to Adeniyi's written statement of the incident, both the shift captain and one of the medical officers also provided their written statements supporting Adeniyi's version of events. *Id.*, pp. 7-8, 15.

The nursing assessment following physical examination of Collins on April 10, 2018, found "no redness, bruising or wound was noted [on] alleged trauma sites." ECF 7-4, Declaration of Nichole Madison, Medical Records Custodian, with pertinent medical records, p. 2. When Collins reported the PREA claim to medical staff on April 11, 2018, he was immediately interviewed and assessed by JCI medical staff. *Id.*, p. 3. Color photos of Collins's upper torso were taken by staff during the SIR investigation. *Id.*, pp. 25-28. When questioned by corrections staff, Collins first denied that the officer touched his "butt or [his] penis" (*id.*), then reported to medical staff later the same day that the "officer touched him on the rear." *Id.*, p. 5. His physical exam was negative for any swelling or bruises. Collins was not sent to the hospital for forensic examination and follow-up because there was no indication of an exchange of bodily fluids. *Id.* Additional follow-up was "not indicated, as [Collins was] medically stable." *Id.*

Defendant Campbell's Declaration rests on knowledge that the incident was reported and, in his capacity as Warden, Campbell expects staff to comply with prison directives and policies governing safety and security. ECF No. 7-5, Campbell Declaration, ¶¶ 1-3.

---

[7] Officer T. White, the shift video operator, was unable to retrieve video footage relating to the incident. ECF No. 7-3, pp. 4, 17.

## Standard for Summary Judgment

This Court is mindful of its obligation to liberally construe the pleadings of pro se litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990), or "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). In making this determination, "[t]he district court...must hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally." *White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989).

A motion for summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party.

*See Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 437 (4th Cir. 1998). Nevertheless, a party who bears the burden of proof on a particular claim must factually support each element of his claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Thus, on those issues on which the non-moving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson,* 477 U.S. at 256.

## Analysis

### A. Liability of Defendant Adeniyi

An Eighth Amendment claim may be stated where sexual abuse of a prisoner by a correctional officer is established. *See Woodford v. Ngo,* 548 U.S. 81, 118 (Breyer, J., dissenting) ("Accordingly, those inmates who are sexually assaulted by guards, or whose sexual assaults by other inmates are facilitated by guards, have suffered grave deprivations of their Eighth Amendment rights."); *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.") (internal citation omitted); *Schwenk v. Hartford,* 204 F.3d 1187, 1197 (9th Cir. 2000) ("A sexual assault on an inmate by a guard—regardless of the gender of the guard or of the prisoner—is deeply 'offensive to human dignity.'" (citing *Felix v. McCarthy,* 939 F.2d 699, 702 (9th Cir.1991))); *Boddie v. Schnieder.* 105 F.3d 857, 861 (2d Cir. 1997) ("Because sexual abuse by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims."). However, not every allegation of sexual abuse is objectively, sufficiently serious for the purpose of an Eighth Amendment claim. *See Wilkins v. Gaddy,* 559 U.S. 34, 130 S. Ct. 1175, 1178 (2010) ("[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action."); *Boddie,*

105 F.3d at 861 ("[I]solated episodes of harassment and touching ... are despicable.... But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court." (citing *Farmer*, 511 U.S. at 833–34)).

An Eighth Amendment violation also may be stated where physical assault or excessive use of force is alleged. Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Brooks v. Johnson*, 924 F.3d 104, 113 (4th Cir. 2019) (critical Eighth Amendment question one of motive where officer tasered plaintiff in good faith effort to maintain or restore discipline or maliciously "for the very purpose of causing harm" (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (internal quotation marks omitted)).

The undisputed facts establish that there is no evidence suggesting that a sexual or physical assault of Collins occurred as alleged in his unverified complaint. Collins has produced no evidence or affidavit in support of his claims against Adeniyi, and his bald, unverified assertions cannot survive summary judgment scrutiny.

**B. Liability of Defendant Campbell**

Collins makes no specific allegation against Defendant Campbell. Assuming Collins names Campbell merely because he is the Warden, Collins's claim fails. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed

to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Under § 1983, supervisory liability must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

The evidence produced by Defendants regarding the investigation into Collins's claim establishes his claim was taken seriously. Moreover, the undisputed evidence establishes that Collins was not harmed as a result of any alleged misconduct. Without any specific allegations implicating Campbell in any wrong-doing, there is no basis for a claim against him, as liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Where, as here, an investigation is conducted and establishes there is no factual basis to believe that Collins was assaulted as described, there can be no claim that the supervisor tacitly authorized untoward conduct by his employees. Thus, Defendant Campbell is entitled to summary judgment on the constitutional claim raised.

## Conclusion

An Eighth Amendment violation for sexual assault and/or excessive use of force by Defendant Adeniyi is not apparent on this record, and no basis exists to hold Defendant Campbell liable for the incident. Accordingly, the Motion to Dismiss or, Alternatively, for Summary

9

Judgment filed by Correctional Defendants Campbell and Adeniyi, construed as a motion for summary judgment, will be granted. A separate Order follows.

Dated this ___19___ day of August 2019.

FOR THE COURT:

_____
James K. Bredar
Chief Judge